**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

PASQUALE J. GUERRIERO,                                      :

                Plaintiff,               :          1:21-cv-04923-MKB-JRC

                           :

          v.                                                 :

                           :

DIOCESE OF BROOKLYN,                                       :
SHRINE CHURCH OF ST. BERNADETTE                   :

                Defendants.              :

---------------------------------------------------------------X

**DEFENDANT THE ROMAN CATHOLIC CHURCH OF ST. BERNADETTE,**
**IN THE BOROUGH OF BROOKLYN, IN THE CITY OF NEW YORK'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO**
**DISMISS THE SECOND AMENDED COMPLAINT**

SCAHILL LAW GROUP P.C.
Francis J. Scahill (FJS-9392)
James G. Flynn (JGF-5929)
1065 Stewart Avenue, Suite 210
Bethpage, New York 11714
(516) 294-5200
*Attorneys for Defendant*
*The Roman Catholic Church of St. Bernadette,*
*In The Borough of Brooklyn, in the City of New York*

## **Table of Contents**

PAGE

Preliminary Statement.................................................................................................. 1

Statement of Facts......................................................................................................... 3

      A.      The Defendants ............................................................................... 3

      B.      Fr. Capua ......................................................................................... 3

      C.      Plaintiff .......................................................................................... 3

      D.      The May 1959 Letter ...................................................................... 4

Procedural Background.................................................................................................. 6

Argument:  The SAC Fails to Plausibly Plead Claims Against the Parish........................... 6

I.      Applicable Standards Under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1332............ 6

II.     Each of the Causes of Action in the SAC Must Be Dismissed................................. 8

      A.      The SAC Fails To State a Claim for Negligence. ........................... 8

      B.      The SAC Fails to Plead a Plausible, Non-Conclusory Basis for
              The Claim for Negligent Training, Supervision, or Retention. .................... 9

      C.      The SAC Fails to Plausibly Plead A Claim for Gross Negligence. .............. 12

      D.      The SAC Fails to Plausibly Plead A Claim for Premises Liability. ............. 13

      E.      The SAC Fails To Plead Particularized Facts Establishing
              The Existence of A Fiduciary Duty Owed to Plaintiff. ................................ 14

Conclusion ...................................................................................................................... 16

## Table of Authorities

CASES                                                                                                                  PAGE

*A.M. v. Holy Resurrection Greek Orthodox Church of Brookville*,
    190 A.D.3d 470 (1st Dept. 2021),
    *leave to appeal dismissed*, 37 N.Y.3d 1100 (2021) .................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................... 7, 10, 11

*Attallah v. Milbank, Tweed, Hadley & McCloy, LLP*,
    168 A.D.3d 1026 (2d Dept. 2019) ........................................................... 16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................... 6, 7

*Benjamin v. Yeroushalmi*,
    178 A.D.3d 650 (2d Dept. 2019) ............................................................ 14

*Caldwell v. Archdiocese of New York*,
    No. 20-CV-1090 (VSB), 2021 WL 1999421 (S.D.N.Y. May 19, 2021) ................. 15

*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*,
    81 N.Y.2d 821 (1993) ...................................................................... 13

*Congregation Yetev Lev D'Satmar, Inc. v. Kahana*,
    31 A.D.3d 541 (2d Dept. 2006), *aff'd*, 9 N.Y.3d 282 (2007) .................................. 12

*Doe v. Alsaud*,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014) ....................................................... 10

*Doe v. Holy See (State of Vatican City)*,
    17 A.D.3d 799 (3d Dept. 2005) ............................................................ 15

*Ehrens v. Lutheran Church*,
    385 F.3d 232 (2d Cir. 2004) ............................................................ 9-10

*J. D. v. Roman Cath. Diocese of Brooklyn*,
    203 A.D.3d 880 (2d Dept. 2022) ........................................................... 15

*Jaume v. Ry Mgmt. Co., Inc.*,
    2 A.D.3d 590 (2d Dept. 2003) ............................................................. 13

*Judith M. v. Sisters of Charity Hosp.*,
    93 N.Y.2d 932 (1999) ............................................................ 8, 9

*Kenneth R. v. Roman Cath. Diocese of Brooklyn*,
    229 A.D.2d 159 (2d Dept. 1997) ........................................ 9

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014) ............................................... 14

*Lankau v. Luxoft Holding, Inc.*,
    266 F. Supp. 3d 666 (S.D.N.Y. 2017) ............................. 7, 11

*Litvinoff v. Wright*,
    150 A.D.3d 714 (2d Dept. 2017) ........................................ 14

*Lynch v. Nat'l Prescription Adm'rs, Inc.*,
    795 F. App'x 68 (2d Cir. 2020) ......................................... 15

*Montalvo v. Episcopal Health Servs., Inc.*,
    172 A.D.3d 1357 (2d Dept. 2019) ..................................... 9

*Morris v. Chase Bank*,
    125 A.D.3d 731 (2d Dept. 2015) ....................................... 13

*Murray v. Nazareth Reg'l High Sch.*,
    579 F. Supp. 3d 383 (E.D.N.Y. 2021) ............................. 11

*N.X. v. Cabrini Med. Ctr.*,
    97 N.Y.2d 247 (2002) .......................................................... 9

*Norris v. Innovative Health Sys., Inc.*,
    184 A.D.3d 471 (1st Dept. 2020) ....................................... 10

*O'Neil v. Roman Cath. Diocese of Brooklyn*,
    98 A.D.3d 485 (2d Dept. 2012) ......................................... 11

*Pasternack v. Lab'y Corp. of Am.*,
    892 F. Supp. 2d 540 (S.D.N.Y. 2012) ............................. 12

*PC-41 Doe v. Poly Prep Country Day Sch.*,
    No. 20CV03628DGSJB, 2021 WL 4310891 (E.D.N.Y. Sept. 22, 2021) ............... 12

*Peralta v. Henriquez*,
    100 N.Y.2d 139 (2003) ........................................................ 13

*Principal Nat'l Life Ins. Co. v. Coassin*,
  884 F.3d 130 (2d Cir. 2018) ................................................................... 7

*Ray v. Ray*,
  22 F.4th 69 (2d Cir. 2021) ................................................................... 7-8

*Richardson v. City of New York*,
  326 F. App'x 580 (2d Cir. 2009) ....................................................... 8, 9

*Romero v. City of New York*,
  839 F. Supp. 2d 588 (E.D.N.Y. 2012) ................................................... 9

*Rosenfeld v. Lenich*,
  370 F. Supp. 3d 335 (E.D.N.Y. 2019) .................................................. 7

*Ross v. Mitsui Fudosan*,
  2 F. Supp. 2d 522 (S.D.N.Y. 1998) ...................................................... 9

*Sommer v. Federal Signal Corp.*,
  79 N.Y.2d 540 (1992) ........................................................................ 13

*Steven B. v. Westchester Day School*,
  196 A.D.3d 624 (2d Dept. 2021) ........................................................ 14

*Thomas v. Morley*,
  No. 20-cv-7520, 2022 WL 394384 (S.D.N.Y. Feb. 9, 2022) ................. 7

*Yukos Capital S.A.R.L. v. Feldman*,
  977 F.3d 216 (2d Cir. 2020) .............................................................. 14

**Statutes and Rules**

28 U.S.C. § 1332 ...................................................................................... 6, 8

CPLR 3016(b) ............................................................................................ 14

Fed. R. Civ. P. 9(b) ............................................................................... 2, 14

Defendant, The Roman Catholic Church of St. Bernadette, In The Borough of Brooklyn, in the City of New York s/h/a Shrine Church of Bernadette ("St. Bernadette's" or the "Parish"), respectfully moves to dismiss the Second Amended Complaint (the "SAC"), ECF No. 52, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  As demonstrated herein, the facts alleged in the SAC are insufficient to plausibly state any cause of action for which relief can be granted.

## Preliminary Statement

At issue on this motion is whether the Parish can be held liable for the actions of a priest, Fr. Nicholas J. Capua ("Fr. Capua"), who allegedly sexually abused the minor plaintiff on Parish property during the 1960s.  Despite court-ordered discovery and two prior amendments, the SAC fails to plausibly allege how the Parish could be vicariously liable for the priest's misconduct or otherwise had prior notice of Fr. Capua's propensity to commit sexual misconduct.

The SAC alleges five causes of action: (i) negligence; (ii) negligent training-supervision-retention;  (iii) gross  negligence;  (iv) premises  liability;  (v) breach  of  fiduciary  duty.    As demonstrated below, each of the five causes of action fails to plausibly state a cause of action and must be dismissed.

*First*, the Parish cannot be vicariously liable under a negligence theory for the rogue and private actions of its employee under a *respondeat superior* theory.  New York law is unflinching on this point.  Sexual abuse is always a departure from, and outside the scope of, any employment and cannot be attributed vicariously to an employer.  *See* Point II-A below.

*Second*, the claim for negligent training-supervision-retention fails to plausibly allege, as it must, that the Parish had prior notice of Fr. Capua's propensity to commit sexual misconduct. Plaintiff attempts to establish that the Parish had notice that Fr. Capua was a "bad priest" by reference to a letter written before he was even assigned to the Parish, but the letter, which is highly

laudatory of Fr. Capua, does not identify any wrongdoing by him, much less specify the type of misconduct that would have placed anyone on notice of his alleged propensity to commit sexual abuse. Nor does the SAC explain how St. Bernadette's would have access to (and thus notice of) a handwritten letter penned years earlier by a parishioner at a different parish and directed, not to the Parish, but to the Bishop of the Diocese. When all is said and done, what remains of plaintiff's so-called notice allegations consist of seemingly ordinary behavior, namely, a priest asking a student at a Catholic school to assist at Catholic masses in the Parish, which is insufficient to even raise a suspicion of misconduct. *See* Point II-B below.

*Third*, plaintiff's claim for gross negligence fails, not only because the SAC fails to support its negligence-based allegations in the first two causes of action, but because it fails to allege any basis for willful or reckless conduct on behalf of either defendant. *See* Point II-C below.

*Fourth*, plaintiff's claim for premises liability fails for the same reasons because, absent notice of Fr. Capua's propensity to commit sexual abuse, the SAC fails to plausibly establish that his presence constituted a foreseeably dangerous condition on Parish property. In any event, the premises liability is redundant of the first three negligence-based claims, and must be dismissed as duplicative. *See* Point II-D below.

*Finally*, plaintiff's claim for breach of fiduciary duty fails for several reasons. As a threshold issue, each of the elements of a claim for breach of fiduciary duty, including the existence of a fiduciary relationship itself, are subject to the heightened particularity requirements of Federal Rule of Civil Procedure 9(b). Under established New York law, however, a church or religious organization does not owe a fiduciary duty merely because a parishioner or congregant attended a church or a sponsored school, and a plaintiff must allege particularized facts demonstrating that the plaintiff's relationship with the organization was unique or distinct from other parishioners

generally.   The SAC fails to particularize a unique relationship between *this* Parish and *this* plaintiff distinct from other parishioners or students.   Lacking particularity, the claim for breach of fiduciary duty is redundant of the fatally flawed negligence-based claims, and must be dismissed as duplicative.   *See* Point II-E below.

## Statement of Facts

### A.    The Defendants

Co-defendant, The Roman Catholic Diocese of Brooklyn, New York (the "Brooklyn Diocese"), is a religious corporation organized and doing business in Brooklyn, New York.  *Id.* at ¶ 20.[1]  The SAC alleges that St. Bernadette's is "a religious entity within the Diocese of Brooklyn, which operates both a parish and a school."  *Id.* at ¶ 21.

### B.    Fr. Capua

Fr. Capua was a Roman Catholic priest who was ordained in 1956 and was assigned to a separate parish, St. Alphonsus, until 1961.  ¶¶ 29, 38.  In 1961, Fr. Capua was transferred to St. Bernadette's, ¶ 36, where he remained until February 1967, when he requested and received a transfer to a different parish.   ¶ 39; SAC Ex. 2.   Fr. Capua continued to serve at several other parishes within Brooklyn and Queens until 2007.   ¶ 40.   In 2007, over 40 years after leaving St. Bernadette's, Fr. Capua was removed from ministry.  *Id.*[2]

### C.    Plaintiff

Plaintiff was a student at the school operated by St. Bernadette's in the 1960s.  *Id.* at ¶ 45. Plaintiff alleges that when he was in second grade, *id.* at ¶ 41, Fr. Capua recruited him from the school yard under the pretext of needing "an altar boy to help serve," ¶ 42, and began sexually

---

[1]      References to "¶ __" are to enumerated paragraphs in the Second Amended Complaint.

[2]      Fr. Capua died in 2010.

3

abusing him multiple times a week "in the basement of St. Bernadette." *Id.* at ¶¶ 5, 45.  Plaintiff

alleges that Parish staff members, including the pastor, Monsignor Francis P. Barilla, and Sister

Immaculate, should have "suspected" that plaintiff was being abused because plaintiff was "pulled

from class and taken to Father Capua" to help serve Mass, but took no action. ¶ 47.

**D.     The May 1959 Letter**

        Plaintiff further alleges that the Parish was on notice of Fr. Capua's propensity to commit

sexual abuse by a May 20, 1959 letter written to the Bishop of the Brooklyn Diocese by a

parishioner at St. Alphonsus, Fr. Capua's prior parish.  Plaintiff annexes the entire handwritten

letter as Exhibit 1 to the SAC.  Selecting certain language, Plaintiff asserts that the letter refers to

Fr. Capua as a "bad priest" "who took over the youngsters."  A review of the *complete* text of the

letter tells the opposite story.  After citing five concrete examples of Fr. Capua's exemplary

behavior, the author inquires rhetorically, "do you see a bad priest in these words?", concluding

that "Father Capua is a credit to the young men leaving seminar[ies] today."  The May 1959 letter

does not identify the basis for any negative opinion of Fr. Capua, or specific misconduct, if any,

committed by Fr. Capua.  Nor does the SAC indicate whether St. Bernadette's ever received a

copy of the letter or was otherwise apprised of its contents.  The May 1959 letter states in its

entirety:

<div style="margin-left:40%">

Mrs. Marie Kelly
65 Java Street
Brooklyn, 22 N.Y.
May 20, 1959

</div>

His Eminence
Bishop
Brooklyn, N.Y.

Your Eminence,

        I am a parishioner at St. Alphonsus Church, Kent St., Brooklyn.  I am
writing this letter to you, inasmuch, as I have been hearing some nasty statements
about one of our priests namely, Father Nicholas Capua – one of the statements

<div style="text-align:center">4</div>

being – "I will report him to the Bishop." I hasten to send this letter, and hope that if you should receive a complaint this letter will help you to judge this priest and the parishes in a just and understanding way.  One of the statements I hear repeatedly your Eminence, is that Father Capua is a "bad" priest – a bad priest – well let's see – this so-called "bad" priest to date [*i*] has given a pint of his <u>own</u> blood to a parishioner who couldn't pay for it, [*ii*] he saved a woman from suicide, who at the death of her young husband became despondent she not only has returned to the Sacraments – her mind has returned to normalcy, out of his own pocket [*iii*] he paid for and helps the whole family out of a filthy dirty home – back to the Sacraments & a clean & wholesome outlook on life – [*iv*] he was the first to the side of 13-16-year-old boys who were involved in a case – very Immoral – [*v*] in the history of St. Alphonsus and I am in the Parish – twenty-three years – have I ever seen the day that our Confraternity was so packed & their Communion Breakfast attendance was <u>four</u> <u>hundred</u> – thanks to Father Capua, his work at St. Al's is amazing – never have I seen so many teen-agers at the Communion rail then, since Father Capua took over the youngsters – these are the things – that Father Capua has done for St. Alphonsus, your Eminence, do you see a bad priest in these words?  And I will give you the names & addresses of the people I have had to mention in this letter – if I must –

I think its [*sic*] sinful for Catholic layman to pass judgment on a young priest – Father Capua is a credit to the young men leaving seminarys [*sic*] today – for they face a cruel world. I think Father Capua, at this point, could stand a word of encouragement from you, your Eminence – since I am sure he must hear this nonsense too & it must be disheartening for him.

Yours for a true understanding of good & holy priest, I Remain
Sincerely Yours, Mrs. Maria J. Kelly

SAC Ex. 1 (enumerated brackets added; emphasis in original).  Read in context, and not just through plaintiff's carefully manicured snippets, the May 1959 letter does not identify any wrongdoing of any type by Fr. Capua or support any rumors that he was a "bad priest."  What plaintiff insinuates as sinister by a reference to "taking over the youngsters" is actually a statement that can only be read as complimentary as it is placed directly within the context of their increased participation in parish activities.  To add insult to injury, plaintiff glibly alleges that, as a result of the May 1959 letter, Fr. Capua was "immediately" transferred to St. Bernadette's, ¶ 10, even

though the next paragraph of the SAC acknowledges that the transfer was not immediate, but took place in 1961, over two years later.  ¶ 11.[3]

## Procedural Background

Plaintiff commenced this action by filing a Complaint in this Court on August 13, 2021. ECF No. 1.  On April 19, 2022, plaintiff filed an Amended Complaint.  (ECF 37).  On August 25, 2022, after discovery ordered by Magistrate Judge Cho, plaintiff filed the SAC, along with two exhibits (ECF No. 52), including the May 20, 1959 letter (Ex. 1) and letters relating to Fr. Capua's subsequent request for a transfer in February 1959.  (Ex. 2).

It should be noted that Magistrate Judge Cho permitted, but plaintiff did not avail himself of discovery of "Sister Immaculate" for a deposition.   On April 28, 2022, upon plaintiff's representation that his former teacher, "Sister Immaculate" a/k/a "Mackie Boone" was still alive, Magistrate Judge Cho ordered the Parish to assist plaintiff in locating her.  On June 18, 2022, the Parish provided a last known address for Mackie Boone, who at least as of that time, was alive and living in another State.  On June 18, 2022 and again on October 26, 2022, Magistrate Judge Cho twice granted plaintiff leave to seek to take her deposition.  Plaintiff has not done so.

## Argument

### The SAC Fails to Plausibly Plead Claims Against the Parish.

**I.      Applicable Standards Under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1332.**

To survive a motion to dismiss, the plaintiff must allege facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To

---

[3]      To make matters worse, the SAC, citing Exhibit 2 to the SAC, alleges that Fr. Capua requested an "immediate transfer" *in 1961 to* St. Bernadette's, ¶ 34 & n.9 – even though Exhibit 2 is a 1967 letter in which Fr. Capua requests a transfer *in 1967 from* St. Bernadette's.  Nor does the word "immediate" appear in Exhibits 1 or 2.

"state[] a plausible claim for relief," a plaintiff must allege facts sufficient to support more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" sufficient. *Id.*

Rather, a complaint must allege facts that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "[S]omething more than [] a statement of facts that merely creates a suspicion of a legally cognizable right of action" is required. *Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 673 (S.D.N.Y. 2017). Speculative, conclusory, or indefinite factual allegations are just as infirm as legal conclusions. *See, e.g.*, *Thomas v. Morley*, No. 20-cv-7520, 2022 WL 394384, at *15 (S.D.N.Y. Feb. 9, 2022) (allegation that plaintiff was "forced" to sign agreement is insufficient where no facts were pled to support conclusion that it was "forced").

Conclusory allegations do not entitle a party to discovery. Thus, "even 'where the facts are peculiarly within the possession and control of the defendant,' however, the complaint must nonetheless provide 'enough facts to raise a reasonable expectation that discovery will reveal evidence of illegality.'" *Rosenfeld v. Lenich*, 370 F. Supp. 3d 335, 346 (E.D.N.Y. 2019) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Finally, New York substantive state law applies to diversity actions. *Principal Nat'l Life Ins. Co. v. Coassin*, 884 F.3d 130, 134 (2d Cir. 2018) ("Federal courts sitting in diversity cases will, of course, apply the substantive law of the forum State on outcome determinative issues."); *Ray v. Ray*, 22 F.4th 69, 72 (2d Cir. 2021) ("When sitting in diversity jurisdiction and determining

New York state law claims, we must apply the law of New York ...."). Here, plaintiff invokes the diversity statute, 28 U.S.C. § 1332, ¶ 23, and the Court must apply the substantive law of the State of New York to each of these claims.

## II.     Each of the Causes of Action in the SAC Must Be Dismissed.

### A.     The SAC Fails To State a Claim for Negligence.

The SAC's First Cause of Action alleges that defendants are vicariously liable under a *respondeat superior* theory in negligence for the conduct of their employee, Fr. Capua, who committed the abuse "in the course and scope of his employment acting as a priest and educator of plaintiff...." ¶¶ 64, 65, 78. "The doctrine of *respondeat superior* renders an employer vicariously liable for torts committed by an employee acting within the scope of the employment. Pursuant to this doctrine, the employer may be liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment." *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (1999) (citation omitted).

Under New York law, however, a sexual assault perpetrated by an employee is never in furtherance of an employer's business and is always a clear departure from the scope of employment. As the New York Court of Appeals explained in *Judith M.*, "[i]f ... an employee 'for purposes of his own departs from the line of his duty so that for the time being his acts constitute an abandonment of his service, the master is not liable.'" *Id.* (citations omitted). *See also Richardson v. City of New York*, 326 F. App'x 580, 582 (2d Cir. 2009) ("Richardson's state-law claim for vicarious liability [for sexual assault upon minors] also fails: Waite's actions were not within the scope of her employment.").

As the Federal District Court for the Southern District of New York observed, "New York courts consistently have held that sexual misconduct and related tortious behavior arise from

personal motives and do not further an employer's business, even when committed within the employment context." *Ross v. Mitsui Fudosan*, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998). *See also Romero v. City of New York*, 839 F. Supp. 2d 588, 630 (E.D.N.Y. 2012) ("Mr. Benavides' conduct with respect to his illegal sexual relationship with Ms. Doe falls outside the scope of his NYCDOE employment and was clearly not in furtherance of his employer's interest."); *Montalvo v. Episcopal Health Servs., Inc.*, 172 A.D.3d 1357, 1360 (2d Dept. 2019) ("[a] sexual assault perpetrated by an employee is *not in furtherance of an employer's business* and is a clear departure from the scope of employment, having been committed for wholly personal motives.") (emphasis added; citing *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251 (2002)).

Accordingly, the negligence claim against the defendant Parish, which is expressly predicated on a *respondeat superior* theory, ¶ 57, must be dismissed because any alleged sexual abuse by Fr. Capua necessarily represents a clear departure from, and falls outside the scope of his employment. *Judith M..*, 93 N.Y.2d at 933; *Richardson*, 326 F. App'x at 582; *Ross*, 2 F. Supp. 2d at 531; *Romero*, 839 F. Supp. 2d at 630; *Montalvo*, 172 A.D.3d at 1360.

### B.   The SAC Fails to Plead a Plausible, Non-Conclusory Basis for The Claim for Negligent Training, Supervision, or Retention.

The SAC asserts a Second Cause of Action for negligent training-supervision-retention. However, "a necessary element of …causes of action [for negligent hiring, negligent retention, and negligent supervision] is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Kenneth R. v. Roman Cath. Diocese of Brooklyn*, 229 A.D.2d 159, 161 (2d Dept. 1997) (citations omitted). *See also Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (lower court appropriately dismissed negligent supervision claims where plaintiff failed to adduce evidence sufficient to show that defendants

were aware of their employee's propensity to assault minors or otherwise to engage in sexual misconduct).

Moreover, the alleged prior notice must be specific "as to the sort of conduct which caused the injury." *Norris v. Innovative Health Sys., Inc.*, 184 A.D.3d 471, 472-73 (1st Dept. 2020). "New York courts have held in employee sexual misconduct cases that an employer is only liable for negligent supervision or retention if it is aware of *specific* prior acts or allegations against the employee." *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) (emphasis added). Further, "[t]he prior misconduct, moreover, must be of *the same kind* that caused the injury; general, unrelated or lesser allegations of prior wrongdoing are insufficient." *Id.* at 681 (emphasis added). Thus, merely alleging a defendant's "knowledge of an alleged abuser's criminal history does not raise an issue of fact as to whether [defendant] knew or should have known of her propensity to commit sexual assault." *Norris*, 184 A.D.3d at 472-73.

The negligent training-supervision-retention claim in the Second Cause of Action fails to plausibly allege how the Parish knew or should have known of Fr. Capua's propensity for the conduct that caused the injury, prior to the injury's occurrence. The May 1959 letter does not identify or specify any misconduct by Fr. Capua, and the SAC does not allege whether or how the Parish would have even learned of private correspondence with the bishop. Here, the SAC also fails to specify the type of misconduct that Fr. Capua was accused of (if he had been accused at all at the time), *Norris*, 184 A.D.3d at 472-73, or whether it was "of the same kind." *Doe*, 12 F. Supp. 3d 674, which "permit the court to infer more than the mere possibility of misconduct" or the "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Next, the SAC does not allege that plaintiff ever reported, or even discussed the alleged abuse with anyone. Failure to report is an additional factor to be considered in dismissing claims

for negligent supervision, training, or retention. *See, e.g., O'Neil v. Roman Cath. Diocese of Brooklyn*, 98 A.D.3d 485, 487 (2d Dept. 2012) (dismissing claim for alleged sexual harassment).

The facts as alleged do not form a plausible basis for asserting that the Parish had notice of Fr. Capua's alleged propensity to commit sexual abuse, as it is no "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal,* 556 U.S. at 678, or otherwise gives rise to "a suspicion of a legally cognizable right of action." *Lankau*, 266 F. Supp. 3d at 673. Speculative, conclusory, or indefinite factual allegations are insufficient to form a predicate for notice. *Thomas*, 2022 WL 394384, at *15.

The SAC improperly attempts to inject another element of notice into the mix, namely, the scandalous allegation that notice of sexual assault should be presumed as to all Catholic organizations. As Paragraph 59 of the SAC states, "[d]efendants knew that the Catholic schools and the Roman Catholic Church generally, had a long history of employees and/or agents who had sexually molested children." ¶ 59. Contrary to plaintiff's assertion, arguments of notice based on alleged generalized conduct, such as "Church practices writ large," are routinely rejected. *See, e.g., Murray v. Nazareth Reg'l High Sch.*, 579 F. Supp. 3d 383, 389 (E.D.N.Y. 2021) ("The amended complaint contains broad allegations about the Catholic Church's record of tolerating and concealing sexual abuse of minors by clergy. Such generalizations, as distressing as they are, are not specific to the Diocese. The Catholic Church is a global institution with a vast number of dioceses and clergymen and plaintiff's reliance on Church practices writ large or a specific report about a different diocese in Pennsylvania are not enough to state a claim against a diocese in New York.").

Similarly, the SAC embarks on a lengthy citation of Roman Catholic Canon Law, ¶¶ 37-38, notes 10-12, to allege that Fr. Capua's history of transfer is somehow inconsistent with Canon

11

Law.  The Court should not take this bait.  As a threshold issue, the Court should steer clear of entangling itself in the resolution of ecclesiastical precepts.  *See, e.g.*, *Congregation Yetev Lev D'Satmar, Inc. v. Kahana*, 31 A.D.3d 541, 543 (2d Dept. 2006), *aff'd*, 9 N.Y.3d 282 (2007) ("resolution of the parties' dispute would necessarily involve impermissible inquiries into religious doctrine and the Congregation's membership requirements.") (citations omitted).  In any event, the SAC misstates the "immediacy" of Fr. Capua's transfer to St. Bernadette's, by two years, *compare* ¶ 10 and ¶ 11, and fails to explain how many transfers would be acceptable or unusual under Canon Law.  No inference of wrongdoing can be culled from such indefinite pleading.

In sum, the SAC's failure to allege a non-conclusory or non-speculative basis for alleging notice of Fr. Capua's propensity to commit sexual misconduct provides ample basis for dismissing the Second Cause of Action for negligent training-supervision-supervision.

**C.     The SAC Fails to Plausibly Plead A Claim for Gross Negligence.**

The SAC's Third Cause of Action asserts a claim for gross negligence but fails because the SAC itself fails to state a claim for negligence.  "'Where a claim for ordinary negligence fails, a gross negligence claim necessarily fails.'"  *PC-41 Doe v. Poly Prep Country Day Sch.,* No. 20CV03628DGSJB, 2021 WL 4310891, at *12 (E.D.N.Y. Sept. 22, 2021) (quoting *Pasternack v. Lab'y Corp. of Am.*, 892 F. Supp. 2d 540, 552 (S.D.N.Y. 2012)).  Thus, because the SAC fails to plead a duty sufficient to state claims in negligence, *see* Point II-A *supra*, or in negligent supervision-training-retention, *see* Point II-B *supra*, the cause of action for gross negligence necessarily fails.

Furthermore, the SAC fails to identify any intentional or reckless actions on behalf of the Parish, as is required for a claim for gross negligence.  "[G]ross negligence differs in kind, not only degree, from claims of ordinary negligence.  It is conduct that evinces a reckless disregard

12

for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821, 823-24 (1993) (citing *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 554 (1992) (internal quotation marks omitted).   Here, the alleged "misconduct" consisting of allowing a student at a religious school to assist a member of the clergy in religious activity.   This is ordinary and expected conduct, not intentional or reckless behavior by the Parish.

### D.     The SAC Fails to Plausibly Plead A Claim for Premises Liability.

Under New York law, landowners have "a duty to maintain their property in a reasonably safe condition." *Peralta v. Henriquez*, 100 N.Y.2d 139, 144 (2003).   However, premises liability is limited to the "*foreseeable conduct* of third parties on the property to prevent them from intentionally harming or creating an unreasonable risk of harm to others." *Jaume v. Ry Mgmt. Co., Inc.*, 2 A.D.3d 590, 591 (2d Dept. 2003) (emphasis added).   "This duty arises when there is an ability and opportunity to control such conduct, and *an awareness of the need to do so*." *Morris v. Chase Bank*, 125 A.D.3d 731, 732 (2d Dept. 2015) (emphasis added).

The SAC fails to demonstrate that facts that show that the Parish had any awareness of Fr. Capua's alleged propensity for sexual misconduct or that the misconduct was foreseeable.   *See* Point II-B *supra*; *Jauma*, *supra*; *Morris*; *supra*.   Accordingly, the premises liability claim must fail as well for failure to plead foreseeable harm, as the SAC fails to plausibly allege that the Parish was aware of Fr. Capua's alleged propensities.   *See, e.g. A.M. v. Holy Resurrection Greek Orthodox Church of Brookville*, 190 A.D.3d 470, 471 (1st Dept. 2021), *leave to appeal dismissed*, 37 N.Y.3d 1100 (2021) ("Plaintiffs' negligent supervision, negligent failure to train, negligent failure to warn, and negligent premises liability claims fail insofar as there is nothing in the record to indicate that the Church or Archdiocese defendants had *any awareness* of Kehagias's son's propensity for sexual violence.") (emphasis added; citations omitted).

In any event, the cause of action for premises liability must be dismissed as duplicative of any surviving negligence claims. *Steven B. v. Westchester Day School*, 196 A.D.3d 624, 624 (2d Dept. 2021) ("the court properly directed the dismissal of [the premises liability] action as duplicative since it arose from the same facts as the negligent supervision and negligent retention causes of action and does not allege distinct damages.") (citations omitted).

### E.   The SAC Fails To Plead Particularized Facts Establishing The Existence of A Fiduciary Duty Owed to Plaintiff.

The SAC asserts a Fifth Cause of Action for breach of fiduciary duty.  "The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Litvinoff v. Wright*, 150 A.D.3d 714, 715 (2d Dept. 2017) (citations omitted). *See also Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020).

Claims for breach of fiduciary duty are subject to the heightened particularity requirements of Fed. R. Civ .P. 9(b). *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014) ("[i]n asserting claims of fraud—including claims for aiding and abetting fraud or a breach of fiduciary duty that involves fraud—a complaint is required to plead the circumstances that allegedly constitute fraud with particularity."). State courts in New York also require that each element of a claim for breach of fiduciary duty be pleaded with particularity. CPLR 3016(b); *see, e.g.*, *Benjamin v. Yeroushalmi*, 178 A.D.3d 650, 654 (2d Dept. 2019) (dismissing claim for breach of fiduciary duty which "contained only bare and conclusory allegations, without any supporting detail"); *Litvinoff*, 150 A.D.3d at 715.

Here, the SAC fails to allege with any particularity that a fiduciary relationship was even created between this plaintiff and this Parish.  "A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters

14

within the scope of the relation." *Lynch v. Nat'l Prescription Adm'rs, Inc.*, 795 F. App'x 68, 69 (2d Cir. 2020) (internal quotation marks omitted).  The SAC does not allege that either of the defendants, or even Fr. Capua provided any advice or "guidance" to plaintiff that would give rise to a fiduciary relationship. *Lynch*, 795 F. App'x at 69; *Holding Corp*, 282 A.D.2d at 529.

Further, plaintiff's participation in Parish activities or attendance at the Parish school does not give rise to a fiduciary duty.  Under applicable New York law, mere "sponsorship of religious and educational programs for its minor parishioners [is] not, in itself, sufficient to create a fiduciary relationship with plaintiff." *Doe v. Holy See (State of Vatican City)*, 17 A.D.3d 799, 800 (3d Dept. 2005) (citations omitted).  "[T]he plaintiff may not merely rely on the church's status in general, but must come forward with facts demonstrating that his or her relationship with the institution was somehow unique or distinct from the institution's relationship with other parishioners generally." *Caldwell v. Archdiocese of New York*, No. 20-CV-1090 (VSB), 2021 WL 1999421, at *8 (S.D.N.Y. May 19, 2021) (citing *Doe, supra*).  Similarly, in *J. D. v. Roman Cath. Diocese of Brooklyn*, 203 A.D.3d 880 (2d Dept. 2022), the New York Appellate Division, Second Department recently upheld the dismissal of a breach-of-fiduciary-duty claim brought under the Child Victims Act by a former student abused by a parish priest because "the amended complaint did not allege facts that would give rise to a fiduciary relationship between the plaintiff and the defendants.  The amended complaint failed to allege facts that demonstrated that the plaintiff's relationship with the defendants was somehow unique or distinct from the defendants' relationships with other parishioners generally." *Id.* at 882.  In sum, the SAC fails to allege with particularity, as it must, the creation or existence of a fiduciary relationship between *this* plaintiff and *this* Parish.  As such, the claim for breach of fiduciary duty must be dismissed.

In any event, the breach of fiduciary duty cause of action must also be dismissed as duplicative of the surviving negligence claim. *Attallah v. Milbank, Tweed, Hadley & McCloy, LLP*, 168 A.D.3d 1026, 1029 (2d Dept. 2019) ("Contrary to plaintiff's further contention, the cause of action alleging breach of fiduciary duty was properly dismissed as duplicative of the cause of action alleging legal malpractice, as it arose from the same facts and does not allege distinct damages.") (citations omitted).

<u>**Conclusion**</u>

The Second Amended Complaint fails to allege that Fr. Capua acted within the scope of his duty in committing sexual abuse, that the Parish ever obtained notice of his propensity for sexual misconduct, or that the Parish entered into any fiduciary relationship with plaintiff. Absent any of these factors – prior notice, foreseeability, or existence of a fiduciary relationship – each of the causes of action set forth in the Second Amended Complaint must dismissed for failing to allege a plausible basis for establishing that the defendant Parish should be held liable for any of the causes of action.

Dated:    November 21, 2022
          Bethpage, New York

SCAHILL LAW GROUP P.C.

By: _____
          Francis J. Scahill (FJS-9392)
          James G. Flynn (JGF-5929)
1065 Stewart Avenue, Suite 210
Bethpage, New York 11714
(516) 294-5200
Claim No. PTBQCV-1298
*Attorneys for Defendant*
*The Roman Catholic Church of St. Bernadette,*
*In The Borough of Brooklyn, in the City of New York*

16