UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
PASQUALE J. GUERRIERO,

                    Plaintiff,                    **MEMORANDUM & ORDER**
                                                    21-CV-4923 (MKB)

       v.

DIOCESE OF BROOKLYN and SHRINE
CHURCH OF ST. BERNADETTE,

                    Defendants.
---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff Pasquale J. Guerriero commenced the above-captioned action on August 13, 2021, and filed a Second Amended Complaint ("SAC") on August 24, 2022, against Defendants Diocese of Brooklyn (the "Diocese") and the Shrine Church of St. Bernadette ("St. Bernadette"), alleging state law claims of negligence; negligent training, supervision, and retention; gross negligence; premises liability; and breach of fiduciary duty pursuant to the New York Child Victim Act ("CVA"). (Compl., Docket Entry No. 1; SAC, Docket Entry No. 52.) Plaintiff alleges that while he was a minor student at St. Bernadette during the 1960s, he was regularly sexually assaulted by Father Nicholas Capua, a priest employed by St. Bernadette. (*See* SAC.) On January 20, 2023, Defendants separately moved to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiff opposed the motions. By Memorandum and Order dated March 28, 2024, the Court denied in part and granted in part Defendants' motions to dismiss (the "March 2024 Decision"). (Mar. 2024 Decision, Docket Entry No. 76.)

       Currently before the Court are (1) the Diocese's motion to reconsider the Court's March 2024 Decision, and (2) the Diocese's motion to stay the action pending the liquidation

proceedings of its insurer.[1]  Plaintiff opposed both motions.[2]  For the reasons set forth below, the Court denies the Diocese's motions.

I. Background

The Court assumes the parties' familiarity with the facts of the case and provides only factual and procedural history pertinent to the Diocese's outstanding motions.

    a. **Motion to reconsider**

Plaintiff Pasquale J. Guerriero commenced the action on August 13, 2021, and filed a SAC on August 24, 2022, against the Diocese and St. Bernadette, alleging state law claims of negligence; negligent training, supervision, and retention; gross negligence; premises liability; and breach of fiduciary duty pursuant to the CVA.  (Compl.; SAC.)

On January 20, 2023, Defendants separately moved to dismiss the SAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiff opposed the motions.  (*See* Def. St. Bernadette's Mot. to Dismiss, Docket Entry No. 63; Def. Diocese's Mot. to Dismiss, Docket Entry No. 67; Pl.'s Mem. in Opp'n to Defs.' Mots., Docket Entry No. 65.)

On March 28, 2024, the Court denied in part Defendants' motions to dismiss as to Plaintiff's negligence and gross negligence claims, and granted in part Defendants' motions to dismiss as to Plaintiff's negligent training, supervision, and retention; premises liability; and breach of fiduciary duty claims.  (Mar. 2024 Decision.)  With respect to Plaintiff's negligence and gross negligence claims, the Court found that Plaintiff had plausibly alleged that (1) the Diocese and St. Bernadette owed him a duty *in loco parentis* and as landowners, (2) the Diocese

---

[1] (*See* Letter Mot. to Reconsider ("Diocese's Recons. Mot."), Docket Entry No. 77; Letter Mot. to Stay ("Diocese's Stay Mot."), Docket Entry No. 73.)

[2] (*See* Letter Opp'n to Diocese's Recons. Mot. ("Pl.'s Recons. Opp'n"), Docket Entry No. 81; Letter Opp'n to Diocese's Stay Mot. ("Pl.'s Stay Opp'n"), Docket Entry No. 74.)

and St. Bernadette breached their duties, and (3) Plaintiff suffered harm as a result of their breaches. (*Id.* at 10–18.)

On April 11, 2024, the Diocese requested a pre-motion conference in connection with its anticipated motion to reconsider the Court's March 2024 Decision. (*See* Diocese's Recons. Mot.) On April 19, 2024, Plaintiff opposed the Diocese's request. (*See* Pl.'s Recons. Opp'n.)

### b. Motion for a stay

On November 6, 2023, the Insurance Commissioner of the State of Delaware "filed a complaint against Arrowood [Indemnity Company ('Arrowood')[3]] in the Delaware Chancery Court for entry of a liquidation and injunction order declaring that Arrowood is insolvent, in an unsound financial condition, and 'in a condition that renders its further transaction of insurance presently or prospectively hazardous to its policyholders,'" (Diocese's Stay Mot. 1–2 (quoting Compl. ¶ 32, *Delaware ex rel. Navarro v. Arrowood Indem. Co.*, No. 2023-1126 (Del. Ch. Nov. 6, 2023))), which the Delaware Chancery Court granted on November 8, 2023 (the "Liquidation and Injunction Order"), *see* Liquidation & Injunction Order, *Arrowood Indem. Co.*, No. 2023-1126 (Del. Ch. Nov. 8, 2023). The Liquidation and Injunction Order stated that "Arrowood is insolvent" and "[t]herefore, sufficient cause exists for the liquidation of Arrowood" pursuant to Delaware law, *id.* ¶ 5, and provided for a stay of all underlying litigations involving Arrowood for at least 180 days, *id.* ¶ 20.

---

[3] Arrowood "is a Delaware stock property and casualty insurance company" whose predecessors were the Diocese's "primary general liability insurer and sold a number of primary and excess insurance policies" to the Diocese (the "Arrowood policies"). (Diocese's Stay Mot. 1.) The Diocese "and its parishes and other related entities insured under the Arrowood policies have tendered to Arrowood, for defense and indemnification, all CVA complaints filed against them alleging the negligent hiring, supervision, and/or retention of clergy members or other individuals alleged to have sexually abused minors during the Arrowood policy periods of 1956 through 1977," including Plaintiff's case. (*Id.*)

3

On November 28, 2023, the Diocese requested a pre-motion conference in connection with its anticipated motion to stay this action pending the liquidation proceedings of Arrowood. (*See* Diocese's Stay Mot.)  On December 5, 2023, Plaintiff opposed the Diocese's request.  (*See* Pl.'s Stay Opp'n.)

On May 1, 2024, the Court advised the parties that, "unless Plaintiff or Diocese of Brooklyn objects on or before May 3, 2024, the Court will deem their pre-motion conference submissions to be the motions."  (Order dated May 1, 2024.)  In addition, the Court directed the parties "to submit any additional briefing in letter form on or before May 8, 2024."  (*Id.*)  Neither party objected to the Court's Order, and neither party submitted additional letter briefing.

## II. Discussion

### a. The Court denies the Diocese's motion to reconsider

The Diocese argues that the Court should take judicial notice of St. Bernadette's certificate of incorporation, the deed for the parish property, and a copy of a map from the New York City Automated City Register Information System ("ACRIS") showing ownership information for the property, and, upon doing so, must grant the Diocese's motion to dismiss as to Plaintiff's remaining claims of negligence and gross negligence.  (Diocese's Recons. Mot.)  In support, the Diocese argues that these public records establish that the Diocese did not own St. Bernadette, which operates a parish and school and where the abuse is alleged to have occurred.  (*Id.* at 1–2.)  The Diocese argues that the Court erred in determining that the SAC "plausibly alleged that the Brooklyn Diocese owed [P]laintiff legal duties based on land ownership and *in loco parentis*," because "there can be no landowner liability in the absence of ownership," and "[a]n entity that is separate and distinct from a school and does not operate, maintain, or control the school has no duty to supervise students."  (*Id.* at 1–3.)  The Diocese further argues that it requested that the Court take judicial

4

notice of these documents in ruling on its motion to dismiss, and that "Plaintiff did not, and cannot, dispute the veracity or authenticity of any of these documents." (*Id.* at 2.)

Plaintiff argues that (1) "the decision to take judicial notice of the three documents was totally discretionary, so failing to do so is not a serious error that requires reconsideration," and (2) even if the Court did take judicial notice of the three documents, "it would have been error to use them to, in essence, make factual findings that contradict the pleadings" because "[j]udicial notice may not be used for this purpose." (Pl.'s Recons. Opp'n 2.) In addition, Plaintiff disputes the relevance and accuracy of the three documents because the certificate of incorporation "says nothing about the actual relationship between the two entities"; the property deed is not available on ACRIS and "whole pages" of the document provided by the Diocese "are not legible at all"; and the property description displayed on the ACRIS map provided leads to an unrelated mortgage for Chemical Bank. (*Id.* at 2–3.) Based on these disputes, Plaintiff argues that "it would have been error for the Court to take judicial notice of [the documents], accept the contents as true, and decide a critical fact against Plaintiff." (*Id.* at 3.) In addition, Plaintiff argues that, "even if the Court did take judicial notice of the documents, it would not be dispositive," and "Plaintiff should be afforded complete discovery into the relationship between the two Defendants." (*Id.*)

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *see also* S.D.N.Y. & E.D.N.Y. Local Civ. R. 6.3 (providing that the moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the [c]ourt has overlooked").

5

"In considering a [Rule 12(b)(6)] motion to dismiss for failure to state a claim, 'the district court is normally required to look only to the allegations on the face of the complaint,'" but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)). "If, however, there is a dispute as to the relevance, authenticity, or accuracy of the documents relied upon, the district court may not dismiss the complaint with those materials in mind." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016); *see also Oberlander v. Coinbase Glob. Inc.*, No. 23-184, 2024 WL 1478773, at *4 (2d Cir. Apr. 5, 2024) (emphasizing that "even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document" (alteration in original) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting same); *United States v. Persad*, 607 F. App'x 83, 84 (2d Cir. 2015) ("'A court should not' take judicial notice of a fact 'that is an essential part of a party's case unless the fact is clearly beyond dispute.'" (quoting *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir. 1985))). The "no dispute" requirement has been interpreted strictly: "even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible." *Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, No. 22-CV-10185, 2023 WL 9102400, at *8 (S.D.N.Y. Dec. 29, 2023) (quoting *Savides v. United Healthcare Servs., Inc.*, No. 18-CV-4621, 2019 WL 1173008, at *2 (S.D.N.Y. Mar. 13, 2019)); *Fabi v. Prudential Ins. Co. of Am.*, No. 21-CV-4944, 2022 WL 5429520, at *3 (E.D.N.Y. Aug. 29, 2022) (quoting

6

*Grant v. Abbott House*, No. 14-CV-8703, 2016 WL 796864, at *2 (S.D.N.Y. Feb. 22, 2016));

*Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 221–22 (N.D.N.Y. 2014) (collecting cases).

The Court denies the Diocese's motion to reconsider and its request to take judicial notice of certain documents outside the pleadings. Plaintiff disputes both the relevance and accuracy of the documents submitted by the Diocese, and the Court therefore cannot consider these documents on a motion to dismiss. *See Oberlander*, 2024 WL 1478773, at *4; *Nicosia*, 834 F.3d at 231; *DiFolco*, 622 F.3d at 111. Accordingly, the Court denies the Diocese's motion to reconsider.

### b. The Court denies the Diocese's motion for a stay

The Diocese argues that a stay of this action is warranted because (1) "the Liquidation Bureau will — likely within the next 60 days but possibly sooner — file for an ancillary receivership of Arrowood in New York," which will likely include "a request that the New York Supreme Court stay all actions, lawsuits, or other proceedings in New York against Arrowood's insureds," including the Diocese, (Diocese's Stay Mot. 2–3), and (2) the "Delaware Chancery Court's Liquidation and Injunction Order is entitled to the full faith and credit of the New York courts" because "New York state courts have held that a court-ordered injunction from another state involving claims against insureds of an insolvent liability insurance company are entitled to full faith and credit in New York," (*id.* at 3 (citations omitted)).

Plaintiff argues that (1) the Court "is not required to follow an order, issued by a state court, in a totally unrelated proceeding, with completely different parties, granted unopposed without any notice to Plaintiff," and, finding otherwise "would be a violation of Plaintiff's right to due process," (Pl.'s Stay Opp'n 1); (2) the Diocese "has not shown why the [Liquidation and Injunction Order] would even apply in this case" as the "180-day stay is limited to 'proceedings in which Arrowood is obligated to defend a party insured,'" and "it is not at all clear from the

7

[Diocese's] letter that Arrowood would be obligated to defend this action," (*id.* at 1–2 (quoting Liquidation & Injunction Order ¶ 20)); and (3) "no stay is warranted at all because Plaintiff would be prejudiced," as he is over 70 years old and the liquidation process could take years, and the Diocese would not be prejudiced, as "Arrowood likely has not been paying the defense costs, and whatever meager assets that remain will be split many ways in ma[n]y cases," (*id.* at 2–3).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . ." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (alteration in original) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). However, "[a] stay is an intrusion into the ordinary processes of administration and judicial review," *Maldonado-Padilla v. Holder*, 651 F.3d 325, 328 (2d Cir. 2011) (alteration in original) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)), and thus, the party "seeking the stay 'bears the burden of establishing its need,'" *Louis Vuitton*, 676 F.3d at 97 (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)). "The decision whether to stay an action calls on a district court's 'studied judgment,' requiring the court to examine 'the particular facts before it' and determine 'the extent to which . . . a stay would work a hardship, inequity, or injustice to a party, the public or the court.'" *Range v. 480-486 Broadway, LLC*, 810 F.3d 108, 113 (2d Cir. 2015) (quoting *Louis Vuitton*, 676 F.3d at 99); *see also Landis*, 299 U.S. at 254 (requiring the party seeking a stay to establish "a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to [someone] else").[4]

---

[4] Courts in this Circuit generally analyze five factors to evaluate whether a discretionary stay is warranted: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *See, e.g.*, *Davis v. Banana Republic, LLC*, No. 21-CV-6160, 2023 WL 5979207, at *1–2 (E.D.N.Y. Aug. 25, 2023) (quoting

The Court denies the Diocese's motion for a stay. The Diocese has not established that it would face any "hardship, inequity, or injustice," *Range*, 810 F.3d at 113 — or a "clear case of hardship," *Landis*, 299 U.S. at 254 — if required to move forward with the litigation. Plaintiff, however, has demonstrated that he will be prejudiced by a stay given that he is 70 years old, and it is not clear when the liquidation proceedings of the Diocese's insurer will be resolved,[5] or if Arrowood is required to defend this case.[6] *See, e.g.*, *Applestein v. Kleinhendler*, No. 20-CV-1454, 2021 WL 493424, at *3 (E.D.N.Y. Feb. 10, 2021) (finding that "the plaintiff's private interests in proceeding expeditiously with this civil action would be prejudiced by a stay" as the plaintiff is 88 years old, not a party to the related bankruptcy proceeding, and the timing of the resolution of the related proceeding was unclear); *Galati v. Pharmacia & Upjohn Co.*, No. 10-CV-3899, 2011 WL 2470047, at *2 (E.D.N.Y. June 17, 2011) (finding that a 67 year-old plaintiff would be prejudiced by a stay, *inter alia*, because of her age). Accordingly, the Court denies the Diocese's motion for a stay.

---

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)). *But see Walsh v. Ill. Union Ins. Co.*, No. 10-CV-1390, 2011 WL 13521199, at *2 (S.D.N.Y. Jan. 10, 2011) (applying seven factors as established in *Wash. Mut. Bank v. L. Off. of Robert Jay Gumenick, P.C.*, 561 F. Supp. 2d 410, 411–12 (S.D.N.Y. 2008)). The Second Circuit, however, has not adopted any specific test and has emphasized that such tests only "act as a rough guide for the district court as it exercises its discretion." *Louis Vuitton*, 676 F.3d at 99.

[5] To date, the New York Supreme Court has not granted an ancillary receivership of Arrowood's policyholders and creditors in New York nor granted a stay of all actions, lawsuits, or other proceedings in New York against Arrowood's insureds.

[6] For example, it is unclear that Arrowood would be required to defend this action given that the Court dismissed Plaintiff's claims for negligent training, supervision, and retention, (*see* Mar. 2024 Decision 18–20), and the Diocese indicated that it only "tendered to Arrowood, for defense and indemnification, all CVA complaints filed against them alleging the negligent hiring, supervision, and/or retention of clergy members or other individuals alleged to have sexually abused minors," (*see* Diocese's Stay Mot. 1).

9

### III. Conclusion

For the reasons discussed above, the Court denies the Diocese's motion to reconsider the Court's March 2024 Decision and the Diocese's motion for a stay.

Dated: May 22, 2024
       Brooklyn, New York

                                              SO ORDERED:

                                                      s/ MKB
                                            MARGO K. BRODIE
                                            United States District Judge